

**111 TOWN SQUARE PLACE, SUITE 400 • JERSEY CITY, NEW JERSEY 07310 • TEL (877) 561-0000 • FAX (855) 582-LAWS**
**WWW.IFIGHTFORYOURRIGHTS.COM**

October 26, 2019

**Via ECF**

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      *Re:* *King v. Software Guidance & Assistance, Inc., et al.*
        Civil Case No.: 1:19-CV-02417-VEC
        **Joint Letter Motion for Approval of FLSA Settlement**

Dear Judge Caproni:

  This firm represents Plaintiff Walter King in the above-referenced matter. Pursuant to Your Honor's September 12, 2019 Order (Dkt. 38), we submit this joint letter motion (the "Motion") for approval of the parties' proposed "Settlement Agreement and Release" ("Agreement")[1] as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Counsel for Defendants have reviewed this letter and consent to its filing.

  For the reasons and arguments set forth below, the parties submit that the terms and amounts set forth in the proposed Agreement constitute a fair and reasonable resolution of the parties' *bona fide* dispute over liability, the number of hours worked, and computation of the alleged damages. The parties therefore respectfully request the Court approve the proposed terms of settlement and grant the Motion.

## Case Overview

  On March 18, 2019, Plaintiff, an hourly-paid Systems Analyst/LAN Administrator, brought this action against Software Guidance & Assistance, Inc. ("SGA") and Consolidated Edison Company of New York, Inc. ("Con Edison") and (SGA and Con Edison, collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid wages. (Dkt 1) Specifically, Plaintiff alleged that Defendants (i) failed to pay for all hours worked including work performed outside of the scheduled shifts and during meal breaks and (ii) failed to pay the additional half-time overtime premium for scheduled hours over 40 per week. Pursuant to the Court's Mediation Referral Order (Dkt. 11), the parties

---

[1] A copy of the proposed Agreement is attached as **Exhibit 1** to the Declaration of Tony Teng ("Teng Decl."), filed concurrently herewith.

produced a substantial number of documents and attended a mediation session on June 18, 2019, but did not reach a settlement. (Teng Decl. ¶ 17) Following the mediation, the parties continued to engage in several teleconferences and exchange multiple e-mails concerning their respective positions, factual and legal disputes, and calculations of purported damages. (*Id.* ¶ 18) As the parties took significant steps toward settling this matter, the parties requested and were granted two extensions on the pleading deadlines for Defendants to move against or answer the Complaint and for Plaintiff to file a motion for conditional certification. (Dkt 30, 32) On September 5, 2019, Con Edison filed a Motion to Dismiss and SGA filed its Answer. (Dkt 33, 36) After several rounds of arm's-length negotiations, the parties reached a settlement on September 11, 2019. (Dkt 37)

Con Edison and SGA each has denied any wrongdoing or violation of the FLSA, NYLL or any other law, and maintained that neither entity owes any money to the Plaintiff. The parties disagreed on many factual and legal issues such as whether there was an employment or joint-employment relationship among them, whether Plaintiff's primary duties fall within the Computer Employee exemption (*see* 29 C.F.R. §541.400) or any other exceptions or credits provided for under the FLSA and NYLL, whether Plaintiff performed work outside of his scheduled shifts and/or during meal breaks, whether Plaintiff performed uncompensated work, whether Plaintiff regularly worked a range of 2 to 5 hours every week outside of his scheduled shifts and during meal breaks, whether any of the alleged unpaid hours were gap time, whether liquidated damages are appropriate and whether there are other similarly-situated employees. (Teng Decl. ¶ 22)

Counsel for the parties discussed the complexity of the litigation, its proofs, production of ESI records including swipe data, interviewing and deposing the witnesses, and possible procedural and dispositive motion practices. (*Id.* ¶ 23) Acknowledging the risk of continued litigation, the uncertainty of rulings on the issues such as joint employment relationship, Computer Employee exemption and classification of a position under the FLSA and NYLL, and to avoid the burden and expenses they would face in trying to establish their respective positions, including the costs and fees associated with anticipated fact-intensive discovery and trial preparation, counsel for the parties engaged in several rounds of arm's-length negotiations. (*Id.* ¶ 24)

Under Rule 408, counsel for the parties conferred on the purported damage calculations for the Plaintiff which described the FLSA damages alleged to be owed to him assuming he prevailed 100% on his claims. (*Id.* ¶ 25) Based on the produced records, the claim for half-time damages as to the scheduled overtime hours total 60 hours and would amount to approximately $1,059.60. (*Id.* ¶ 26) Based on the exchanged information about swipe data, the claim for time-and-a-half damages for alleged time worked outside of the scheduled shifts and during meal breaks would amount to approximately $22,245.30. (*Id.* ¶ 27) After extensive investigation into the factual details with Plaintiff and review of the records and information provided by defense counsel and by Plaintiff, Plaintiff's counsel estimates that if Plaintiff prevails he would be entitled to approximately $23,304.90 in unpaid wages, plus an equal amount in liquidated damages under the FLSA. (*Id.* ¶ 28) Plaintiff also acknowledges that if Defendants prevailed in establishing that Plaintiff was exempt and thus not owed any overtime wages, he would recover nothing under the FLSA and further the number of the alleged hours worked outside of the scheduled shifts and during meal breaks per week would have to be factually established. (*Id.* ¶ 29) Moreover, Plaintiff acknowledges that if either Defendant prevailed in establishing it was not Plaintiff's employer,

Plaintiff would be unable to assert viable claims against such Defendant under the FLSA or NYLL. *Id.*)

Ultimately, the parties were able to come to an arm's-length agreement to resolve their differences that incorporated the risks of continued litigation. (*Id.* ¶ 30) The parties have agreed to and executed the proposed Agreement which dictates the terms and conditions of the settlement of Plaintiff's claims. (*See* **Exhibit 1**).

Pursuant to the proposed Agreement, Defendants have agreed to pay $32,973.77 to Plaintiff to resolve his claims, and to separately pay Plaintiff's counsel $539.35 for costs and $16,486.88 for reasonable attorneys' fees pursuant to the fee-shifting provision of the statute. (Teng Decl. ¶ 32) This constitutes valuable consideration for the release and dismissal of his claims and is a fair and reasonable compromise of Plaintiff's claims given the parties' *bona fide* disputes over factual and legal merits.

In sum, the parties submit that the proposed Agreement represents a fair resolution of the matter achieved through multiple rounds of arm's-length negotiation. Thus, the parties respectfully request that the Court grant the Motion and approve the proposed Agreement.

## The Agreement is Fair and Reasonable

FLSA claims may be settled if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. To obtain approval, the parties must demonstrate that their agreement is "fair and reasonable." *Beckert v. Roni Rubinov*, No. 15-CV-1951 (PAE), 2015 U.S. Dist. LEXIS 167052, 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015). "A fair settlement must reflect a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15-CV-06278 (BCM), 2016 U.S. Dist. LEXIS 86206, 2016 WL 3647603, at *1 (S.D.N.Y. June 29, 2016). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.*

In evaluating a proposed settlement of FLSA claims is "fair and reasonable," courts in this circuit consider the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).

3

### *Plaintiff's Range of Possible Recovery*

As stated above, Plaintiff's counsel estimates that if Plaintiff prevailed he would be entitled to approximately $23,304.90 in unpaid wages plus an equal amount in liquidated damages. (Teng Decl. ¶ 28)

In light of the factual and legal disputes underlying the Plaintiff's claims, coupled with the uncertainty of knowing which party would ultimately succeed on the merits and how much the potential recovery would be, Plaintiff is satisfied with the $32,973.77 he stands to receive under the proposed Agreement. (*Id.* ¶ 33) Plaintiff contends that the proposed settlement payment of $32,973.77 to Plaintiff represents his full actual damages plus 41.49% of liquidated damages under the FLSA which reflects a fair and reasonable compromise of the issues in dispute. (*Id.* ¶ 34)

### *Avoiding Anticipated Burdens in Establishing The Respective Claims and Defenses and The Seriousness of the Litigation Risks Faced by the Parties*

At all times, the parties disputed the issues on, *inter alia*, whether Plaintiff's job duties qualified him as exempt under the Computer Employee exemption to the overtime wage requirement of the FLSA, whether there was a joint-employment relationship among the parties, whether Plaintiff performed work outside of his scheduled shifts and/or during meal breaks, whether Plaintiff performed uncompensated work, whether Plaintiff regularly worked a range of 2 to 5 hours every week outside of his scheduled shifts and during meal breaks, whether any of the alleged unpaid hours were gap time and whether liquidated damages are appropriate. (*Id.* ¶ 22)

Given the parties' *bona fide* disputes over factual and legal merits, the continued litigation costs over fact-intensive discovery and trial preparation, the potential that a court or jury could resolve the exemption and joint-employment issues in Defendants' favor, the Court should find that the burdens, costs, and risks to Plaintiff of litigating this matter outweighed the possibility holding out for a greater recovery.

### *Arm's-Length Bargaining Between Experienced Wage and Hour Counsel*

The parties and their counsel engaged in several rounds of negotiations and discussions regarding factual and legal disputes and damage calculations. (*Id.* ¶¶ 22-30) At all times, the parties were at an arm's-length relationship and were represented by experienced counsel.

In this matter, counsel relied on their experience of similar alleged wage and hour cases to perform a thorough evaluation of Plaintiff's claims and his potential recovery. Counsel's able representation ensured that Plaintiff's rights under the statute were protected. Considering the extent of possible recovery and the risks discussed above, the parties arrived at the above settlement amount and agreed this amount is a fair and reasonable settlement under the circumstances of this case.

4

## Attorneys' Fees and Costs are also Reasonable[2]

In addition to assessing the reasonableness of the settlement award, "the court must also assess the reasonableness of [any attorneys'] fee award." *Velasquez v. SAFI-G, Inc*., 137 F. Supp. 3d 582, 585 (S.D.N.Y. 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Courts in this circuit generally approve attorneys' fees that represent one-third contingency fees. *See Garcia v. YSH Green Corp*., 2016 U.S. Dist. LEXIS 158001 (S.D.N.Y. Nov. 14, 2016) (collecting cases); *see also Angamarca v. Hud-Moe LLC*, No. 18-CV-1334(RA), 2018 U.S. Dist. LEXIS 212518, at * 3 (S.D.N.Y. Dec. 17, 2018) ("A contingency fee award is presumptively valid where 'the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method' in this District") (citation omitted); *Beckert*, 2015 U.S. Dist. LEXIS 167052, at *3 ("[W]hen awarding attorneys' fees on a percentage-of-the-fund basis, the appropriate denominator is the total settlement net of costs."); *Zhang v. Lin Kumo Japanese Rest. Inc.*, 2015 U.S. Dist. LEXIS 115608, at *3 & n.1 (S.D.N.Y. Aug. 31, 2015) ("The Court's view is that attorneys' fees, when awarded on a percentage basis, are to be awarded based on the settlement net of costs."). "Moreover, the amount is reasonable when compared to what would be awarded under the lodestar method." *Yunjian Lin v. Grand Sichuan 74 St. Inc.*, No. 15-CV-2950 (RA), 2018 U.S. Dist. LEXIS 110266, at *16 (S.D.N.Y. July 2, 2018).

Here, the parties have negotiated and Defendants have agreed to pay Plaintiff $539.35 for costs and $16,486.88 for reasonable attorneys' fees.

Plaintiff's Counsel has incurred costs and expenses in a total amount of $539.35 as detailed in the Summary of Attorneys' Fees and Costs. (*See* **Exhibit 2** to Teng Decl.) The costs and expenses incurred are reasonable and integral to the investigation, prosecution and settlement of this case, and therefore the Court should approve the payment of costs to Plaintiff's Counsel. *See, e.g., Hernandez v. JRPAC Inc.*, 2017 U.S. Dist. LEXIS 1988, at *4-5 (S.D.N.Y. Jan. 6, 2017) ("Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."); *Tao Rui Wu v. Maxphoto Ny Corp*., No. CV 15-3050 (LDH)(ARL), 2016 U.S. Dist. LEXIS 158991, at *9 (E.D.N.Y. Nov. 15, 2016) ("Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable.").

Further, the attorneys' fees here are reasonable and should be approved. The attorneys' fees of $16,486.88 constitute 1/3 of the net settlement amount of $49,460.65 and are less than the Plaintiff's counsel's lodestar. (Teng Decl. ¶ 36). As of October 26, 2019, Plaintiff's attorneys and their staff have collectively performed legal work for a total of 146.10 hours in the pre-suit investigation, prosecution and settlement of this case. (*Id.* ¶ 37) Pursuant to the firm's standard billing rates, Plaintiff has incurred a total of $65,168.81 for attorneys' fees. (*Id.* ¶ 38) Nevertheless, for purposes of this Motion, the submitted Summary of Attorneys' Fees and Costs applies the discounted rates in accordance with the presumptively reasonable hourly rates within this District

---

[2] Defendants take no position on Plaintiff's request for attorneys' fees and costs.

which establishes attorneys' fees of $35,379.38. (*Id.*) *See, e.g., Hernandez v. Boucherie LLC*, No. 18-CV-7887 (VEC), 2019 U.S. Dist. LEXIS 134020, at *10 (S.D.N.Y. Aug. 8, 2019) ("numerous courts in New York City have determined . . . that a fee ranging from $250 to $450 per hour is appropriate for experienced litigators in wage-and-hour cases."); *Velandia v. Serendipity 3, Inc.*, No. 16-CV-1799, 2018 U.S. Dist. LEXIS 116594, 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018) ("Courts in this District routinely approve of an hourly rate for associates between $200 and $300").

In addition to legal work performed throughout litigation, "courts in this circuit typically award attorneys' fees for pre-filing preparations," *Kahlil v. Original Old Homestead Rest., Inc*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009), and "for all time spent on settlement." *Ruiz v. Maidenbaum & Assoc., P.L.L.C.*, 2013 U.S. Dist. LEXIS 109733 (S.D.N.Y. 2013) (holding "[s]ettlement is an important part of an attorney's work on a case, and time spent on such efforts is compensable").

Until the conclusion of the entire settlement process, Plaintiff's counsel and their staff will continue to perform legal work including all necessary steps essential to obtain the court's approval of the settlement, ensure distribution of the settlement payments to the Plaintiff, and lastly file a stipulation of dismissal with prejudice after settlement payments are dispersed. (Teng Decl. ¶ 39).

The parties are not requesting the Court to approve Plaintiff's counsel's entire lodestar, but are requesting approval of the reduced amount of $16,486.88, or 1/3 of the net settlement amount, for the attorney's fees agreed to as a term of the settlement agreement. Notwithstanding the additional legal work expected to be done to perfect this settlement, Plaintiff's counsel did not seek additional fees to be paid by Defendants and the total amount of the fees sought remains to be $16,486.88.

As such, the parties respectfully submit that the amounts of $539.35 for costs and $16,486.88 for fees are reasonable.

## **Conclusion**

In light of the foregoing, the parties submit that the proposed Agreement reflects a fair and reasonable resolution of the matter achieved through discovery and a number of arm's-length negotiations between skilled and experienced counsel, in a context where all parties faced significant litigation risks with respect to hotly contested factual and legal issues. Further, the proposed fees and costs are appropriate in this case. Therefore, the parties respectfully request that the Court approve their proposed Agreement as fair and reasonable, and permit the parties to dismiss this action with prejudice.

Respectfully submitted,

BROWN, LLC

/s/ *Tony Teng*
Ching-Yuan "Tony" Teng

cc: All counsel of record (via ECF)